BRETT L. TOLMAN, United States Attorney (#8821)
CARLOS A. ESQUEDA, Assistant United States Attorney (#5386)
Attorneys for the United States of America
185 S. State St., #400
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682
Facsimile:  (801) 524-6924

WAN J. KIM, Assistant Attorney General
STEPHEN J. CURRAN, Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530
Phone: (202) 514-4762
Fax: (202) 514-8336

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>SHAUN A. WALKER, TRAVIS D. MASSEY, and ERIC G. EGBERT,<br><br>  Defendants. | Case No. 2:06CR406DAK<br><br>GOVERNMENT'S POSITION WITH RESPECT TO OFFENSE LEVEL COMPUTATION AND OBJECTIONS TO THE PRESENTENCE REPORT FOR DEFENDANTS SHAUN A. WALKER, TRAVIS D. MASSEY AND ERIC G. EGBERT<br><br>JUDGE DEE BENSON |

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby gives notice, pursuant to D.U.Crim. R. 32- 1, that the government objects to

paragraphs 25, 30, 31, 36, 37, 38, 40 and 62 of the pre-sentence report prepared by United States Probation Officer Tony Maxwell.

The United States objects to paragraph 25, the calculation of the base offense level applicable to Defendants Walker, Massey and Egbert for Count One. Specifically, the government contends that the defendant's base offense level should be 14 with increases of 2 for more than minimal planning, 5 for serious bodily injury, 3 for racial motive and 2 for restraint, for a total offense level of 26, because 2H1.1(a)(1) requires the use of the guideline for the underlying offense. In Count One, the offense conduct involved an aggravated assault that involved more than minimal planning, was racially motivated and resulted in serious bodily injury. The resulting Guideline range is 63-78 months.

### I. 2H1.1(a) (1) REQUIRES THE USE OF THE UNDERLYING OFFENSE TO CALCULATE THE GREATER BASE OFFENSE LEVEL.

The Guidelines section applicable to each of the defendants' offenses is U.S.S.G. § 2H1.1. That section requires that the defendant's base offense level to be calculated on the guideline most applicable to the underlying conduct if that guideline results in a higher offense level than otherwise would be applicable under § 2H1.1. U.S.S.G. § 2H1.1(a)(1), cmt. n.1. In this case, the underlying conduct includes an aggravated assault by Keith Cotter and Defendant Massey that took place on March 15, 2003, outside of the Port of Call bar. The trial testimony of Keith Cotter and witness, Valerie Hodge, established that this assault involved striking the victim in the head and taking him into the ground in a manner that caused the victim to strike his head on the pavement. This testimony also established that as a result of these blows, the victim suffered a head injury that included, at a minimum, an extended loss of consciousness.

This assault constitutes relevant conduct as to each defendant with respect to their convictions on Count One. Count One charges that each of the defendants conspired to assault "non-whites" in the Salt Lake City area during a period that is book-ended, for purposes of Count One, by the New Year's Eve assault on James Ballesteros and the March 15, 2003, assault outside of the Port O' Call bar. Count One also expressly identifies the March 2003 assault as one of the overt acts of the conspiracy. Although this assault was conducted by Defendant Massey and admitted fellow conspirator, Keith Cotter, the other defendants also are responsible for this assault under *Pinkerton v. United States*, 328 U.S. 640 (1946) and the Sentencing Guidelines, both of which provide that a conspirator is criminally responsible for the reasonably foreseeable acts of their fellow conspirators in furtherance of the conspiracy, even if they did not directly participate in those acts. *Pinkerton*, 328 U.S. at 647-48; *United States v. Wacker*, 72 F.3d 1453, 1464 (10th Cir. 1995); *United States v. Willis*, 102 F.3d 1078, 1083 (10th Cir. 1996); U.S.S.G. § 1B1.3(a)(1)(B) (defining relevant conduct to include *Pinkerton* liability).

As Count One charged, and the testimony established at trial, the March 2003 assault was undertaken in furtherance of defendants' conspiracy to assault "non-whites" using public accommodations in the Salt Lake City area. The evidence at trial also established both that the March 2003 assault and injuries inflicted in that assault were reasonably foreseeable. The March 2003 assault was similar in nature to the assault on Ballesteros that took place several months earlier, including involving multiple defendants ganging up and physically beating – including striking him in his head – a single victim because of his race/ethnicity. Although the March 2003 injury was more severe than the injuries inflicted on Ballesteros, a reasonable person would foresee that the act of striking someone in the head repeatedly is likely to result in head injuries,

including serious head injuries and possibly death. The conspiracy involved, according to Cotter's testimony, that the defendants all agreed that in order to raise awareness for the National Alliance and the white power movement, "non-whites" were to be targeted and physically assault in order to spread their views and to raise fear in the community.

Consequently, § 2H1.1 requires that the offense level for Count One for each of the defendants be calculated pursuant to § 2A2.2 (aggravated assault), because that guideline addresses the underlying conduct and results in a higher offense level than § 2H1.1. The base offense level under § 2A2.2 begins at 14 and requires additional enhancements based on the nature of the two assaults described in Count One and the injury inflicted in the March 2003 assault. An additional two-point enhancement applies under § 2A2.2(b)(1) because the offenses both involved more than minimal planning. As the evidence at trial established, these assaults were the result of extensive pre-assault discussions about the need to assault "non-whites" to send the message that they were not welcome in the Salt Lake City area. Additionally, in each assault, the defendants lured the victims outside into an area where the defendants could more effectively assault them, a form of conduct that the Guidelines expressly recognize as involving more than minimal planning. U.S.S.G. § 2A2.2 cmt. n.2.

An additional five points also apply because the head injuries inflicted in the March 2003 offense caused, at a minimum, serious bodily injury. U.S.S.G. § 2A2.2(b)(3); see also § 1B1.1 cmt. n.1 (defining serious bodily injury). Both Cotter and Hodge testified at trial that the victim of the assault outside the Port O' Call bar was rendered unconscious and appeared dead or seriously injured. Furthermore, an additional three points should be added to the calculation for racial motive pursuant to § 3A1.1(a), as correctly imposed in paragraph 27 of the Presentence

report.

The United States also objects to the omission of the restraint-of-victim enhancement under § 3A1.3 for each of the defendants under Counts One and Two. Multiple witnesses, including Keith Cotter and victim James Ballesteros, testified that Ballesteros was held as Cotter and the defendants assaulted him outside of the O'Shucks Bar and Grill on December 31, 2002. This conduct constitutes physical restraint of the victim during the offense. U.S.S.G. § 3A1.3; see also § 1B1.1 cmt. n.1 (defining "physically restrained"). Furthermore, Cotter testified that during the assault of the Native-American male outside the Port O' Call bar, he restrained the victim threw him down on the ground and jumped on top of him holding him down. The resulting base offense level for each defendant, therefore, should be an offense level of 26, which should reflect a guideline range in paragraph 62, of 63-78 months.

## II. AGGRAVATING ROLE ENHANCEMENT 3B1.1

The United States also objects to the omission of a four-point aggravating-role enhancement under U.S.S.G. § 3B1.1. with regard to the offense level calculation for defendants Walker and Massey under Counts One and Two. In this case, the criminal activity included at least five criminal participants: the three defendants, all of whom were found guilty of the conspiracy alleged in the Indictment; admitted co-conspirator Keith Cotter; and Brad Callahan, who Cotter identified as a member of the conspiracy and who admitted he knew of these incidents and was present during discussions regarding the conspiracy. It was undisputed that defendants Walker and Massey played leadership roles in the Salt Lake City National Alliance unit at the time of these events, and the trial testimony of Cotter established that this role carried over into this sub-group's clandestine planning to conduct race/ethnicity-motivated assaults in

5

the Salt Lake City area. Trial testimony proved that defendant Walker was the unit coordinator of the Utah Chapter of the National alliance, organized public and private meetings, and established direction for the local unit. Shortly thereafter, defendant Walker then became Western Regional unit coordinator and then moved on to become the national chairman of the National Alliance. According to the trial testimony of Keith Cotter, defendant Walker further instructed others to attack bartender Jimmy Ballesteros in the ÒShucks assault and further testimony of Cotter and Callahan revealed that defendant Walker instructed others to carry out race motivated assault in the Salt Lake Valley to send a message of "white pride," during their private meetings as head of the local chapter. Defendant Massey also played a leadership role in that he was defendant Walker's assistant while defendant Walker was the local unit coordinator and took over the position of authority when defendant Walker left that position to become Western Regional unit coordinator. Trial testimony also demonstrated that defendant Massey participated, as a local leader, in the decision to conduct race motivated assaults within the Salt Lake Valley. Additionally, defendants Walker and Massey devised the specific plan to assault Ballesteros, and defendant Massey similarly made the decision to target the man he and Cotter perceived to be a Native American in the March 2003 assault.

The Tenth Circuit has held that, "[t]o qualify for an adjustment under [§ 3B1.1], the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. . . ." *United States v. Wilfong*, 475 F.3d 1214, 1218 (10th Cir. 2007). In other words,

> [a] defendant satisfies § 3B1.1 by controlling or organizing others in a criminal activity. In order for § 3B1.1 to apply, the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible

for organizing others for the purpose of carrying out the crime.

*United States v. Valdez-Arieta*, 127 F.3d 1267, 1270-71 (10th Cir. 1997). *See also United States v. Morgan*, 936 F.2d 1561, 1574 (10th Cir.1991) (upholding district court's finding of organizer or supervisor where defendant "exercised any degree of direction or control over a subordinate in the criminal scheme"), *cert. denied*, 502 U.S. 1102 (1992); *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir.) ("In order to be a supervisor, one needs merely to give some form of direction or supervision to someone subordinate in the criminal activity . . . "), *cert. denied*, 498 U.S. 870 (1990).

Section 3B1.1 outlines three upward departures the court may consider in imposing sentences in conspiracies:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1.

"There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." *Wilfong*, 475 F.3d at 1218 (quoting U.S.S.G. § 3B1.1, cmt. n. 4). Additionally, the presence of underlings is not necessary for there to be a manager, leader, supervisor, or leader in a criminal endeavor. *Valdez-Arieta*, 127 F.3d at 1271.

With respect to distinguishing between subsections (a) and (b), there are certain factors the Court must consider in distinguishing a leadership and organizational role from one of mere

management or supervision. These include:

> [1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning and organizing the offense, [6] the nature and scope of the illegal activity, [7] and the degree of control and authority exercised over others.

*Wilfong*, 475 F.3d at 1218 (quoting U.S.S.G. § 3B1.1, cmt. n. 4). "In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility." *United States v. Rosales*, 2004 WL 2307370, at *4 (10th Cir. 2004).

Applying the law to the facts, defendants Walker and Massey qualify for upward departures under (a) or at least (b) since they organized and/or led a conspiracy of five or more members. The jury found that the three defendants conspired to interfere with civil rights. Keith Cotter admitted that he was involved in the conspiracy as well, and he named Brad Callahan as a fellow conspirator, who later admitted his involvement in the group. Therefore, there are five persons forming a conspiracy, which meets the qualification for the upward departure for leaders/organizers. While not dispositive, defendants Walker and Massey's leadership roles in the local National Alliance unit support the conclusion that they played a similar role in the conspiracy (Presentence Report ¶¶ 16-17). Corroboratively, Cotter testified that both defendants Walker and Massey were leaders of the conspiracy, particularly Walker. Additionally, defendants Walker and Massey both came up with the idea to assault the bartender, Ballesteros, at the O'Shucks Bar. Cotter further testified that Walker was giving directions to Cotter just prior to the assault on Jimmy Ballesteros at the O'Shucks bar, and further instructed the unit to conduct

such race-motivated assaults on "non-whites" to send the message that they were not welcome in the Salt Lake City area. Finally, according to Cotter's testimony, it was Massey's idea to attack the Native American man at The Galley (the restaurant adjacent to the Port O'Call bar) (Presentence Report ¶ ¶ 14-16).

Consequently, because defendants Walker and Massey jointly directed or controlled three other conspirators, an upward departure of four additional offense-level points should be assessed pursuant to U.S.S.G. § 3B1.1(a), resulting in an offense level of 30, and a guideline range of 97-121 months for defendant Walker and Massey.

RESPECTFULLY SUBMITTED this 31st day of July 2007.

BRETT L. TOLMAN
United States Attorney


/s/ Carlos A. Esqueda
CARLOS A. ESQUEDA
Assistant United States Attorneys

STEPHEN J. CURRAN
Trial Attorney
Civil Rights Division


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office, and that a copy of the foregoing Government's Position With Respect to Offense Level Computation and Objections to the Presentence Report, was faxed and mailed, postage prepaid, to all parties

named below, this 31st day of July 2007.

    Michael Jaenish
    150 South 600 East, #5C
    Salt Lake City, UT 84102

    Fred Metos
    10 W. Broadway # 650
    Salt Lake City, Utah 84101

    Robin Ljungberg
    39 Exchange Place, Suite 200
    Salt Lake City, Utah 84111

    Tony Maxwell
    U.S. Probation Officer
    160 U.S. Courthouse
    350 South Main Street
    Salt Lake City, Utah 84111

                                                  /s/ Candy Grosjean
                                                  Candy Grosjean